UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE FARM FIRE & CASUALTY CO., <br><br> Plaintiff, Counter-Defendant <br><br> v. <br><br> DRAKE REAL ESTATE GROUP, et al. <br><br> Defendant, Counterclaimant. | CASE NO. 2:22-cv-08776-JLS-MRW <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 90) AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 91)** |

Before the Court are cross-motions for summary judgment filed by Plaintiff State Farm Fire & Casualty Co. and Defendants Drake Real Estate Group ("DREG") and Charles Drake (collectively, the "Drake parties").[1] (Pl.'s Mot., Doc. 90, Pl.'s Mem., Doc. 90-1; Defs.' Mot., Doc 91.) Both parties opposed and responded. (Defs.' Opp., Doc. 97; Pl.'s Opp., Doc. 98; Pl.'s Reply, Doc. 100; Defs.' Reply, Doc. 101.) Having considered the parties' briefs and held oral argument, the Court now GRANTS State Farm's motion and DENIES the Drake parties' motion for the reasons stated below.

## I.  BACKGROUND

State Farm initiated this action on December 2, 2022. (*See* Compl., Doc. 1.) The action seeks a declaratory judgment as to the rights and obligations of State Farm and the Drake parties under an insurance policy (the "Policy") that State Farm issued to DREG. (*Id.* ¶ 1.) DREG and Drake were named as defendants in an underlying lawsuit, *Wong Properties, L.P. v. Drake Real Estate Group*, in Los Angeles County Superior Court. (Defendants' Response to Plaintiff's Statement of Genuine Disputes of Material Fact ("Defs.' Response") ¶ 16, Doc. 101-1.) State Farm rescinded the Policy and seeks a declaration that it owes no duty to defend or indemnify DREG or Drake in that lawsuit. (Compl. ¶ 2.) DREG has also filed a counterclaim alleging that State Farm's denial of coverage is a breach of contract and a breach of the implied covenant of good faith and fair dealing; DREG seeks compensatory damages, punitive damages, and declaratory relief as to State Farm's duty to defend and indemnify it. (*See* Counterclaim, Doc. 9.)

Drake filled out the insurance application for the Policy on behalf of DREG on May 13, 2022. (Defs.' Response ¶ 1.) On June 13, 2022, State Farm's captive agents filled out a second application on Drake's behalf and submitted it to State Farm after having Drake sign the signature page but without having him review the application. (*Id.* ¶¶ 3, 6, 7.) There is no evidence that the applications were materially different, and Drake testified at

---

[1] DREG also filed a counterclaim against State Farm, making it a counterclaimant in this action and State Farm a counter-defendant. For clarity and ease, the Court simply refers to State Farm as the plaintiff and DREG as the defendant throughout this order.

1  his deposition that, in reviewing the June 13 application, all answers were correct. (Ex. C
2  to Meconis Decl., Drake Dep. at 137–38, Doc. 90-3.) State Farm issued the Policy with
3  an effective date of June 9, 2022, based on the June 13 application. (Defs.' Response ¶ 8.)
4         On September 14, 2022, Darryl Wong, the owner of Wong Properties, sent a
5  demand letter to DREG alleging that DREG had negligently handled several property
6  renovations; DREG forwarded the demand letter to State Farm on September 19, 2022.
7  (*Id.* ¶¶ 14, 15.) The demand letter informed the Drake parties that Wong Properties was
8  damaged in an amount exceeding $1.5 million as "a direct result of Drake's negligence"
9  and asked Drake whether he would agree to mediation before Wong filed a lawsuit. (Ex. 9
10 to Ho Decl., Demand Letter, Doc. 91-11.) Wong then filed the underlying lawsuit, which
11 alleges that, from 2019–2020, DREG renovated 11 vacant rental units owned by Wong
12 Properties. (Plaintiff's Response to Defendants' Statement of Genuine Disputes of
13 Material Fact ("Pl.'s Response") ¶ 30, Doc. 100-1.) Allegedly, the units required an
14 upgrade to the units' circuit breakers, but DREG began electrical work without a permit.
15 (*Id.*) The units were eventually cited for code violations and the Department of Water and
16 Power refused to connect utility service to any vacant units until the code violations were
17 resolved. (*Id.*) Wong Properties lost rental income in the meantime and sued DREG and
18 Drake for negligence and breach of the management agreement that bound Drake and
19 Wong. (*Id.*)
20        The terms of the Policy provide that State Farm will cover "**Damages** or **Defense**
21 **Costs** because of **Claims** as a result of a **Wrongful Act** in performing **Insured Services**
22 for others." (Ex. B to Gill Decl., Insurance Policy, Part 5.A at 19, Doc. 90-4.) "'**Claim**'
23 means a demand or assertion of a legal right seeking **Damages** made against any of **You**."
24 (*Id.* Part 6.C at 25.) "'**Damages**' means money judgment, award or settlement, except
25 those for which insurance is prohibited by law. **Damages** does not include fines or
26 penalties; or fees, deposits, commissions or charges for goods or services." (*Id.* Part 6.D at
27 25.) After evaluating the claims in the underlying lawsuit, State Farm informed DREG on
28 October 24, 2022, that there was no coverage for this claim under the Policy. (Pl.'s

3

Response ¶ 32.) State Farm explained that Wong's claim against the Drake parties was first made prior to the effective date of the Policy and that the Drake parties knew of the claim before the Policy period. (*Id.*)

The relevant portion of the Policy provides:

> **We** will cover a written **Claim** first made against any of **You** arising from a **Wrongful Act** committed between the **Retroactive Date** and the Effective Date of this Policy, but only if all of the following conditions are met:
>
> (1) The written **Claim** is first made against any of **You** during the **Policy Period**. **We** will consider a **Claim** to be first made against **You** when a written **Claim** is received by any of **You.**
>
> (2) None of **You** knew, prior to the Effective Date of the first of one or more miscellaneous errors and omissions policies issued to **You** by State Farm Mutual Automobile Insurance Company or its affiliates which together provided continuous coverage until the Effective Date of this Policy, of a circumstance that could reasonably be expected to lead to the **Claim**; and
>
> (3) There is no other valid and collectible errors and omissions insurance for the **Claim**.

(Ex. B to Gill Decl., Insurance Policy, Part 5.C.b at 21–22.)

State Farm determined there was no coverage under the "Prior Wrongful Acts" provision based on several emails between Wong and Drake about the rental units. The undisputed facts show that the exchange began on April 5, 2021, when Wong informed Drake that the Department of Water and Power's refusal to connect utility services had led to a lockdown of the vacant units; Wong believed the solution to the lockdown would be long and expensive, presenting an issue that was "gigantic in scope and resolution." (Ex. F to Meconis Decl., 4/5 Emails at 174, Doc. 90-3.) Drake sent back a timeline of the work on the properties and tried to explain the source of the electrical upgrade problems. (*Id.* at 175–77.) On April 8, 2021, Wong responded and suggested that he and Drake try to find a neutral mediator to settle the dispute, but clarified there was no need to involve lawyers.

(Ex. G. to Meconis Decl., 4/8 Emails at 179, Doc. 90-3.)  Notably, the management agreement specified that mediation was a prerequisite before Wong or Drake could initiate adversarial proceedings against one another for claims arising under the agreement.  (Pl.'s Response ¶ 17.)

Next, on April 12, 2021, Drake responded with a "proposed settlement/resolution" wherein Wong would pay reduced rates on the amounts owed to subcontractors, vendors, and DREG.  (Ex. H to Meconis Decl., 4/12 Emails at 181–82, Doc. 90-3.)  Wong again mentioned mediation on April 26, 2021, and explained that there was still a lot of distance between his understanding of the problems at the rental units and Drake's explanations.  (Ex. I to Meconis Decl., 4/26–4/29 Emails at 185–87, Doc. 90-3.)  Drake responded with the conditions under which he would mediate, including that all outstanding balances be paid, that mediation be conducted through JAMS, and that after mediation, Drake and DREG "receive a full release of liability." (*Id.* at 186–87.)  On June 4, Drake and Wong laid out their respective positions again: in response to Drake's request for payment, Wong explained that he will not "pay money for construction work that is inferior"; Drake disputed that any work was inferior.  (Ex. K to Meconis Decl., 6/4 Emails at 191–93, Doc. 90-3.)  Then, on November 29, 2021, after additional back and forth about the electrical issues at the rental properties, Wong emailed Drake:

> You've consistently denied responsibility for the issues arising from your involvement at the buildings. Here's where my mind is right now. There are significant issues and claims at each property, of varying degrees, but all culminating in a lot of money that I have lost, am losing and will need invest [sic] more just to correct the wrong doings.
>
> Communicating with you has been futile and frustrating because you deny responsibility. I am obligated to ask one more time if you will admit responsibility and if you will bear the costs to correct the issues.

(Ex. L to Meconis Decl., 11/29 Emails at 197, Doc. 90-3.)

State Farm used these emails to deny coverage, explaining that either a claim was made prior to the effective date of the Policy or that the Drake parties knew of a circumstance that could reasonably be expected to lead to a claim. (Pl.'s Response ¶ 32.) State Farm also rescinded the Policy due to material misrepresentations because Drake had indicated on the application that there were no prior claims, and he knew of no circumstances that might result in a claim. (*Id.* ¶ 33.) State Farm now moves for summary judgment, arguing that, as a matter of law, it has no duty to defend the underlying action either because the Policy does not cover this claim or because the Policy was rightly rescinded. State Farm also argues that the Policy features an exclusion for claims arising out of activities as a construction manager. (Pl.'s Mem. at 8–9.) State Farm's motion also seeks summary judgment as to DREG's counterclaim. (*Id.* at 9–10.) The Drake parties have also moved for summary judgment, arguing that State Farm has a duty to defend them as a matter of law. (Defs.' Mot. at 8.) The Drake parties argue that, because State Farm's captive agents completed the insurance application without letting Drake review it, State Farm cannot rely on the application in denying a duty to defend. (*Id.*)

## II. LEGAL STANDARD

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and a fact is "material" when it might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

"When … both parties file cross-motions for summary judgment, each must carry its own burden under the applicable legal standard." *Ehrman v. United States*, 429 F. Supp. 2d 61, 67 (D.D.C. 2006) (citing *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968) ("Cross-motions are no more than a claim by each side that it alone is entitled to

summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified.")). Further, the Court "must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

### III. DISCUSSION

To resolve these cross-motions for summary judgment, the Court begins by determining whether State Farm has a duty to defend the underlying action.

#### A. State Farm's Duty to Defend

Under California law, an insurer's duty to defend is broader than the duty to indemnify. *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993). Courts look to the allegations of the underlying complaint, and facts which an insurer "learns from the complaint, the insured, or other sources" to determine whether an insured's claim is covered under an insurance policy. *See Bowie v. Home Ins. Co.*, 923 F.2d 705, 707 (9th Cir. 1991) (quoting *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276 (1966)).

Here, State Farm argues that there is no duty to defend because of the limitations on coverage imposed by the "Prior Wrongful Acts" provision in the Policy. (Pl.'s Mem. at 19.) It is not disputed that the wrongful acts giving rise to the underlying action—the Drake parties' alleged negligence with regards to renovations at 11 rental units owned by Wong Properties—took place between 2019 and 2020. (*See* Pl.'s Response ¶ 30.) It is also undisputed that the Policy's effective date was June 9, 2022–June 9, 2023. (*Id.* ¶ 11.) Therefore, the Drake parties are entitled to a defense in the underlying action only if *all* the conditions for coverage of prior wrongful acts are met. The written claim against the Drake parties must have been "first made" after June 9, 2022, and the Drake parties must have not known of "a circumstance that could reasonably be expected to lead to [a] claim" before June 9, 2022. (*Id.* ¶ 13.)

#### 1. Written Claim First Made During Policy Period

State Farm argues that the emails in 2021 between Drake and Wong amounted to a written claim made against the Drake parties prior to the Policy period. (Pl.'s Mem. at 21.)

The Drake parties argue that the emails did not express a demand, did not reference litigation, and did not impose a deadline to respond and, therefore, cannot constitute a written claim.  (Defs.' Mot. at 21–25.)  Instead, the Drake parties insist that a claim was not made until they received a formal demand letter in September 2022.  (*Id.* at 25)

The Policy defines "claim" as "a demand or assertion of a legal right seeking **Damages**"; the Policy defines "damages" to mean "money judgment, award or settlement."  (Ex. B to Gill Decl., Insurance Policy, Part 6.C & D at 25.)  But "**Damages** does not include fines or penalties; or fees, deposits, commissions or charges for goods or services." (*Id.*)  The terms "demand" and "assertion of legal right" are not defined in the Policy.  Courts have interpreted "[t]he ordinary meaning of a 'demand' as used in this context" to mean "a request for something under an assertion of right or an insistence on some course of action," distinct from a "request for an explanation, expression of dissatisfaction, or a lodging of a grievance."  *Westrec Marina Mgmt., Inc. v. Arrowood Indem. Co.*, 163 Cal. App. 4th 1387, 1392 (2008)

Here, Wong's email to Drake on November 29, 2021, amounted to a demand.  The email states that there are "significant issues and claims at each property," informs Drake that Wong has lost money, and insists on a course of action: "I am obligated to ask one more time if you will admit responsibility and if you will bear the costs to correct the issues." (Ex. L to Meconis Decl., 11/29 Emails at 197.)  The previous emails between Wong and Drake provide context that further supports this reading of the November 2021 email.  In an email chain with the subject line "Settlement," Wong and Drake discussed getting a mediator to settle the dispute, though Wong confirmed that he did not think lawyers were necessary.  (Ex. G to Meconis Decl., 4/8 Emails at 179.)  Drake followed up with a "proposed settlement" that would provide subcontractors with partial payment.  (Ex. H to Meconis Decl., 4/11 Emails at 181–82.)  Wong and Drake continued to discuss mediating the dispute, but Drake explained he would agree to mediation only if subcontractors and vendors received payment of all outstanding balances and DREG received a *full release of any liability*.  (Ex. I to Meconis Decl., 4/26–4/29 Emails at 186–

8

87.) Wong continued to complain of construction issues that needed to be corrected and "inferior" construction quality, while Drake continued to demand payment for vendors and subcontractors. (Ex. K to Meconis Decl., 6/4 Emails at 191–92.) This culminated in the November 2021 email, with Wong asserting a right to have Drake cover the costs of fixing the significant issues at the vacant rental units.

The cases that State Farm cites support the finding that this email was a demand. (*See* Pl.'s Mem. at 20–21.) In *Williamson & Vollmer Engineering, Inc. v. Sequoia Insurance Co.*, a letter was sent from an architect to an engineering form, stating: "This letter is to notify you that there are major deficiencies in the air distribution system on this project [due to smaller-than-called-for ducts]. These reduced duct sizes were shown on the shop drawings submitted by the Contractor and approved by your firm and, therefore, we must hold your firm responsible for correcting the condition." 64 Cal. App. 3d 261, 268 n.1 (1976). The appellate court determined that the trial court did not err in determining that this letter was a demand, requiring corrective work from the contractor. *Id.* at 269–70. Similarly, in *Phoenix Insurance Co. v. Sukut Construction Co.*, the appellate court explained that a demand was made when a construction company asked a lawyer to work for free to cure inadequacies in a lien executed by the lawyer. 136 Cal. App. 3d 673, 677 (1982). This was a demand because "further *actions,* not explanations were sought by the client" and because it was not "a request for new services" but "a demand that [the lawyer] correct and complete work for which payment had already been made." *Id.* at 678; *see also Presidio Wealth Mgmt., LLC v. Columbia Cas. Co.*, 2014 WL 1341696, at *7 (C.D. Cal. Apr. 3, 2014) (construing repeated requests to be "made whole" as a demand). Similarly, Wong demanded that Drake correct and complete work, at cost to Drake.

In contrast, the cases cited by the Drake parties are easily distinguished from the facts here and, therefore, are unpersuasive. (Defs.' Mot. at 22–23.) In *Abifadel v. Cigna Insurance Co.*, a cease-and-desist letter was not a demand against a bank's directors because it was directed to the bank, threatened no consequences for failure to comply, and did not propose to hold anyone personally liable. 8 Cal. App. 4th 145, 167 (1992). In

9

contrast, Wong's final email was directed *to* Drake and made it clear that Wong sought Drake's admission of responsibility as well as the consequence of having Drake cover the costs to fix the units. Similarly, in *Hill v. Physicians & Surgeons Exchange*, a patient's expression of dissatisfaction of her surgery was not a demand because she did not request any remedy. 225 Cal. App. 3d 1, 6 (1990). While earlier emails from Wong may have been merely an expression of dissatisfaction, by the final email, Wong made it clear that he sought a remedy from Drake. Finally, in *Griswold v. Liberty Mutual Group, Inc.*, the district court determined that a letter requesting compensation from a dentist for further medical care did not amount to a demand because even though it requested "remuneration," it did not assert a specific right, did not insist on payment, and was more accurately characterized as a "cordial, polite request … about a potential resolution." 2020 WL 13311567, at *11 (C.D. Cal. Oct. 6, 2020). Again, while the letter in *Griswold* might be comparable to earlier emails that Wong sent, by the final email, Wong was clearly asserting a right to have the construction work at the rental units corrected on the basis that he had accrued lost income and Drake was responsible for the problems.

But even though Wong's email was a demand, the Policy constrains the definition of "claim" to a demand for damages and damages are defined as a money judgment, award, or settlement. State Farm does not fully acknowledge this limitation on the definition of claim other than arguing that Wong's emails amounted to a demand for monetary settlement. (*See generally* Pl.'s Mem., Pl.'s Opp., Pl.'s Reply.) It is true that Wong and Drake were clearly discussing settling their disagreement with money: they contemplated mediation; mediation was required under the management agreement before either Drake or Wong could initiate legal proceedings; Drake sought a release of liability after mediation was complete; Drake sought payment for his vendors; and Wong asked Drake to cover the cost of fixing the construction problems at the rental units. But it is not clear that this amounts to a demand for money judgment, award, or settlement, particularly since "charges for goods or services" are excluded from the definition of damages. Other courts have construed such a provision as narrowing the definition of claim *substantially*.

*See Stout v. Media/Pro. Ins. Agency*, 2008 WL 11438029, at *3 (C.D. Cal. Feb. 5, 2008) ("[I]t is clear that the Policy contemplates a Claim to mean the institution of formal legal proceedings intended to result in either money judgment, award or settlement. This is further bolstered by the explicit exclusion of 'disputes over fees, deposits, commissions or charges for goods or services.'")

As a result, the Court concludes that a demand was made prior to June 9, 2022, but that the demand was not for damages as that term is defined in the Policy. State Farm points to no other communications from Wong that might amount to a claim. Therefore, the claim was first made, as the Drake parties argue, when they received the demand letter in September 2022, which is after the Policy's effective date.

### 2. Drake Parties Knew of Circumstances Reasonably Expected to Lead to a Claim Prior to the Policy Period

Even though Wong's demand did not amount to a claim here, the Drake parties still cannot qualify for coverage under the policy because they must satisfy every condition of the "Prior Wrongful Acts" provision. Here, Wong's demand clearly put the Drake parties on notice of circumstances reasonably expected to lead to a claim, and so the Drake parties cannot meet the second condition for coverage of a prior wrongful act.

The Policy does not define "circumstances reasonably expected to lead to." The Drake parties argue that this language is ambiguous, and that the Policy provides no examples or definitions. (Defs.' Mot. at 27.) But their arguments regarding ambiguity seem to be about the questions on the insurance application, not the language of the Policy's coverage provisions regarding prior wrongful acts. (*See id.*) Therefore, as to this provision of the Policy, the Drake parties have not identified any real ambiguity. Furthermore, California courts have described similar language as "perfectly clear." *Phoenix Ins. Co.*, 136 Cal. App. 3d at 677. Because "claim" is clearly defined in the Policy, the Court concludes that "circumstances reasonably expected to lead to a claim" is also clear in its meaning.

The Drake parties next argue that a reasonable person "would not understand four e-mails, which neither mention litigation nor involve attorneys, would constitute a potential Claim." (Defs.' Mot. at 27.) Evaluating whether a circumstance is reasonably expected to lead to a claim is "an objective analysis." *Am. Int'l Specialty Lines Ins. Co. v. Cont'l Cas. Ins. Co.*, 142 Cal. App. 4th 1342, 1372 (2006). The question is whether "a reasonable professional in the insured's position might expect a claim or suit to result." *Kinsale Ins. Co. v. Golden Beginnings, LLC*, 557 F. Supp. 3d 1000, 1008 (C.D. Cal. 2021) (quotations omitted).

Here, based on several of the legally significant reasons that Wong's emails amounted to a demand, those emails mean that a reasonable property manager in Drake's position would expect Wong's demands to lead to a claim. Anytime a property manager is engaged in a months-long dispute with a property owner about the quality of construction work that the property manager supervised, the failure to pay outstanding balances, lost rental income, and disagreement about who should cover the cost of repairs, those disputes, if unresolved, can reasonably be expected to lead to a lawsuit. *See Am. Int'l Specialty Lines Ins. Co.*, 142 Cal. App. 4th at 1372 ("Anytime there is a possible trademark infringement, and the ensuing dispute involves corporations that stand to generate substantial revenues based in part on the use of the competing trademarks to promote their business, that dispute can reasonably be expected to lead to a lawsuit.")

The Drake parties argue that the emails did not mention litigation. (Defs.' Mot. at 27.) But the emails did mention: (1) mediation, which was a prerequisite to either Drake or Wong filing a lawsuit; (2) Drake's request for a full release of liability; (3) Drake's suggestion to reach a monetary settlement; and (4) Wong's demand for Drake to assume responsibility and cover the cost of fixing the construction problems. All these subjects—mediation, liability, settlement, assumption of responsibility, and coverage of costs—would lead a reasonable person in Drake's position to expect that a claim or lawsuit might result. And when Wong's final email indicated he was asking "one more time" about

Drake admitting responsibility and bearing the costs to correct the issues, the clear implication was that Wong was considering escalating the dispute.

The Drake parties argued at oral argument that the reasonable person standard is a fact-specific inquiry and not well-suited to adjudication at summary judgment because a factfinder must decide what a reasonable person knew or expected in these circumstances. Though this is generally true, reasonableness "becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence." *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 346 (2001). The Drake parties did not raise any disputes regarding the content of the emails between Wong and Drake; nor did they identify what other *reasonable* inference could be drawn from the undisputed evidence. In this instance, the expectations of a reasonable person can be resolved as a matter of law.

Finally, the Drake parties argue that Drake did not know that there was a potential claim, otherwise he would have reported it to his insurer under the policy he had in 2021. (Defs.' Mot. at 27–28.) But Drake's subjective understanding is not a factor in this objective analysis. And even if it were, Drake himself was the one to mention a full release of liability, meaning he was aware of the possibility of liability.

The Court concludes that the dispute between Wong and Drake, as memorialized in their emails, was a circumstance that was reasonably expected to lead to a claim. As a result, that dispute does not meet the requirements for coverage under the provision governing prior wrongful acts. Because there is no coverage for this prior wrongful act, State Farm has no duty to defend the underlying action.[2]

---

[2] Having decided that State Farm has no duty to defend based on the Policy's terms, the Court need not address whether the Policy's construction management exclusion applies or whether State Farm properly rescinded the Policy, the two alternative grounds State Farm offered for why it is not obligated to defend the underlying action. (*See* Pl.'s Mem. at 24, 26.)

### B. Drake Real Estate Group's Counterclaims and Other Arguments

Having concluded that State Farm has no duty to defend, the Court addresses the other claims in this action. DREG brought counterclaims against State Farm seeking compensatory and punitive damages for breach of contract and breach of the implied covenant of good faith and fair dealing. Because the claims for breach of contract are premised on State Farm's denial of coverage, those claims fail given that DREG's prior wrongful act is not covered by the Policy as a matter of law. Similarly, as the California Supreme Court observed, "[i]t is clear that if there is no *potential* for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995). Because there is no potential for coverage here, DREG cannot prevail on its claim for breach of the implied covenant of good faith and fair dealing either. DREG's counterclaim is DISMISSED.

The Drake parties also make much of the fact that Drake's insurance application was completed by State Farm's agents rather than by Drake himself. (Defs.' Mot. at 20–21.) Drake argues that "State Farm is estopped from relying on the alleged failure to disclose because it was made by their agents." (*Id.* at 20.) But it is unclear how this estoppel doctrine applies here. In evaluating the scope of the Policy's coverage, the Court did not have to rely on the answers to the insurance application at all. Had the Court reached State Farm's claim for a judicial determination that it properly rescinded the Policy, it would have had to address whether Drake's material omissions could be legally attributed to him. *See Rutherford v. Prudential Ins. Co. of Am.*, 234 Cal. App. 2d 719, 726 (1965) ("Where the insured, in good faith, makes truthful answers to the questions contained in the application, but his answers, owing to the fraud, mistake, or negligence of the agent filling out the application, are incorrectly transcribed, the company is estopped to assert their falsity as a defense to the policy.") However, the Court does not reach that issue, as it grants State Farm's motion on other grounds.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS State Farm's motion for summary judgment and DENIES the Drake parties' motion for summary judgment. DREG's counterclaims against State Farm are DISMISSED. State Farm is entitled to a declaratory judgment reflecting the fact that it has no duty to defend the underlying action. State Farm is ORDERED to submit to the Court, no later than **five (5) days** from the date of this order, a proposed judgment.

DATED: March 20, 2024

JOSEPHINE L. STATON
_____
HON. JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE